UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| THE BULLIS-PURISSIMA ELEMENTARY SCHOOL,<br><br>    Plaintiff,<br><br>v.<br><br>SANTA CLARA COUNTY BOARD OF EDUCATION, et al.,<br><br>    Defendants. | Case No. 24-cv-08527-VKD<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND**<br><br>Re: Dkt. No. 11 |

Plaintiff The Bullis-Purissima Elementary School, operator of Bullis Charter School ("BCS"), brings this action against defendants the Santa Clara County Board of Education ("SCCBOE") and Santa Clara County Office of Education ("SCCOE"), asserting one claim for violations of Title VI of the Civil Rights Act of 1964. Dkt. No. 10. Defendants move to dismiss this claim pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. No. 11. BCS opposes the motion. Dkt. No. 15. Upon consideration of the moving and responding papers and the oral arguments presented, the Court grants defendants' motion to dismiss under Rule 12(b)(6) with leave to amend.[1]

---

[1] In conjunction with their motion to dismiss, defendants filed a request for judicial notice of two documents: the August 26, 2024 SCCBOE resolution conditionally approving the renewal of BCS's charter, and the memorandum of understanding executed between BCS and defendants. Dkt. No. 11-2. At the hearing, BCS indicated that it does not oppose this request. Federal Rule of Evidence 201 states that "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed R. Evid. 201(b)(2). These reliable sources include "matters of public record . . . as long as the facts noticed are not subject to reasonable dispute." *Intri-Plex Techs., Inc. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007) (cleaned up). As the request is unopposed and the documents for which judicial notice is requested appear to be

## I. BACKGROUND

According to the operative complaint, plaintiff The Bullis-Purissima Elementary School operates BCS, a TK-8 public charter school located within the geographic boundaries of Los Altos School District and authorized by the SCCBOE. Dkt. No. 10 ¶ 2. BCS alleges that it is "the highest-performing public school in Santa Clara County." *Id.*

BCS asserts that, despite its high level of performance, over the past six years, SCCBOE has subjected it to "adverse treatment, deprivation of rights under the law, and ongoing harassment" because BCS's student population does not have a racial and ethnic makeup that reflects the population of the school district as a whole. *Id.* ¶¶ 24-27. In particular, BCS alleges that SCCBOE has sent "numerous letters" to BCS "falsely accusing" it of excluding students on the basis of race. *Id.* ¶ 24. BCS asserts that SCCBOE does not subject any of the other fifteen charter schools operating within Santa Clara County to this level of scrutiny and that the "adverse treatment" BCS complains of stems from SCCBOE's "opinion" that "BCS has enrolled too many Asian students and too few Hispanic students . . . ." *Id.* ¶ 25.

On June 3, 2024, BCS sought renewal of its charter for a seven-year term. *Id.* ¶ 26. BCS alleges that its charter should have been unconditionally renewed, given BCS's high level of performance. *Id.* ¶ 2. However, on August 4, 2024, SCCOE informed BCS that "there continues to be underrepresentation of some historically underserved student groups at BCS" and that BCS therefore would receive only "conditional approval." *Id.* ¶ 26. On August 26, 2024, SCCBOE held a meeting to discuss BCS's charter renewal petition where SCCOE "indicated that approval of BCS's renewal petition . . . was not warranted because BCS has not 'fully achieved being reflective of the district' with regard to racial and ethnic makeup . . . ." *Id.* ¶ 27. Defendants ultimately decided to renew BCS's charter with conditions, including the requirement that BCS enter into a memorandum of understanding ("MOU") with defendants. *Id.* ¶ 29.

---

matters of public record, the Court finds that it may properly take judicial notice of these documents for the purpose of recognizing the undisputed fact that BCS's charter is currently approved through 2030. The Court also takes notice of these documents to the extent that they have been incorporated by reference into BCS's complaint. *See, e.g.*, Dkt. No. 10 ¶¶ 9, 10, 20, 29-30, 34.

2

1    BCS appealed defendants' decision to the State Board of Education, which dismissed the
2    appeal on the basis that BCS's charter had been renewed conditionally, not outright denied. *Id.*
3    ¶ 30. Thereafter, SCCOE and BCS conferred regarding the proposed MOU for three months. *Id.*
4    ¶ 31. On November 15, 2024, BCS's board approved a version of the MOU suggested by SCCOE
5    staff. *Id.* ¶ 32. However, this version of the MOU was voted down by SCCBOE on November
6    20, 2024, allegedly because it contained the following language: "Charter School contends that
7    factual evidence did not support any finding that Charter School excluded any student who wished
8    to attend, and disagrees with and objects to the Conditions . . . ." *Id.* ¶¶ 31-32. SCCBOE
9    approved a revised version of the MOU that did not contain this language at its December 18,
10   2024 meeting, a version that BCS contends contained "even more changes . . . beyond the
11   conditions SCCBOE set for renewal on August 27, 2024." *Id.* ¶ 34. BCS signed the MOU but
12   asserts that it "executed [this] MOU under . . . protest." *Id.* After the execution of the MOU, on
13   January 9, 2025, defendants confirmed with the California Department of Education that BCS's
14   charter had been renewed through June 30, 2030. *Id.*

In this action, BCS asserts one claim for violation of Title VI of the Civil Rights Act of 1964 against SCCOE and SCCBOE. BCS seeks both declaratory and injunctive relief and attorneys' fees and costs.

## II.   LEGAL STANDARD

A Rule 12(b)(1) motion to dismiss challenges a federal court's subject matter jurisdiction. Such a challenge may be made either on the face of the pleadings (a "facial attack") or by presenting extrinsic evidence (a "factual attack"). *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)). Here, defendants make a factual attack. Dkt. No. 11 at 12-13. "With a factual Rule 12(b)(1) attack . . . a court may look beyond the complaint to matters of public record without having to convert the motion into one for summary judgment." *White*, 227 F.3d at 1242. The Court also "need not presume the truthfulness of the plaintiffs' allegations" in conducting its jurisdictional analysis. *Id.*

A Rule 12(b)(6) motion to dismiss for failure to state a claim tests the legal sufficiency of the claims in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is

appropriate where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory. *Id.* (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)). In such a motion, all material allegations in the complaint must be taken as true and construed in the light most favorable to the claimant. *Id.*

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). Moreover, the Court is not required to "'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'" *Prager Univ. v. Google LLC* ("*Prager I*"), No. 17-cv-06064-LHK, 2018 WL 1471939, at *3 (N.D. Cal. Mar. 26, 2018) (quoting *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam)). Nor does the Court accept "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This means that the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citations omitted). However, only plausible claims for relief will survive a motion to dismiss. *Iqbal*, 556 U.S. at 679. A claim is plausible if the facts pled permit the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* A plaintiff does not have to provide detailed facts, but the pleading must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678.

Rule 15(a) provides that leave to amend "should be freely given when justice so requires," and "the court must remain guided by the underlying purpose of Rule 15 . . . to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotations and citations omitted). "The decision of whether to grant leave to amend nevertheless remains within the discretion of the district court," which may deny leave to amend if allowing amendment would unduly prejudice the opposing party, cause undue

4

delay, or be futile, or if the party seeking amendment has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

**III.   DISCUSSION**

Defendants challenge BCS's complaint for failure to state a claim under Rule 12(b)(6) and for lack of subject matter jurisdiction under Rule 12(b)(1). Dkt. No. 11 at 1-2. Defendants' jurisdictional challenge is based on the argument that BCS's claim is not ripe for adjudication because its only purported injuries involve hypothetical future harm, rather than an "actual, concrete and particularized" injury that can be redressed by the Court. *Id.* at 15-16. Because the Court must first consider the nature of BCS's claim and its theories of liability, the Court addresses defendants' Rule 12(b)(6) arguments, and then addresses defendants' Rule 12(b)(1) arguments.

### A.   Rule 12(b)(6): Title VI Discrimination

BCS alleges that defendants' treatment of the school during the charter renewal process and the years preceding it violates Title VI of the Civil Rights Act of 1964. Dkt. No. 10 ¶¶ 37-40. Title VI states that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. To state a claim under this statute, BCS must plausibly allege that defendants are (1) "engaging in racial discrimination" and (2) "receiving federal financial assistance." *Fobbs v. Holy Cross Health Sys. Corp.*, 29 F.3d 1439, 1447 (9th Cir. 1994), *overruled on other grounds by Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131 (9th Cir. 2001). Defendants do not contend BCS fails to allege defendants receive federal funds; thus, the sole question is whether BCS has adequately alleged racial discrimination.

The pleading requirements for a discrimination claim under Title VI are similar to those for an equal protection claim under the Fourteenth Amendment. *See Grutter v. Bollinger*, 539 U.S. 306, 343 (2003) (quoting *Regents of Univ. of Cal. v. Bakke*, 438 U.S. 265, 287 (1978) (opinion of Powell, J.)) ("Title VI proscribes only those racial classifications that would violate the Equal

5

Protection Clause or the Fifth Amendment." (cleaned up)). "Private parties seeking judicial enforcement of Title VI's nondiscrimination protections must prove intentional discrimination." *Yu v. Idaho State Univ.*, 15 F.4th 1236, 1242 (9th Cir. 2021). However, at the pleading stage, a Title VI plaintiff need only allege that the defendant engaged in discrimination; he or she need not plead intent. *Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1026 (9th Cir. 1998); *see also Fobbs*, 29 F.3d at 1447 ("Although the plaintiff must prove intent at trial, it need not be pled in the complaint.").

BCS contends that "[c]ounty officials . . . single out and discriminate against BCS and its families because of BCS's predominately Asian enrollment." Dkt. No. 10 ¶ 4. Although the complaint contains only a single claim for relief, BCS appears to assert at least two theories of discrimination. First, BCS alleges that defendants subject BCS to disparate treatment, including: (1) "harass[ment] and bully[ing]" through notices and letters alleging BCS's noncompliance with California law; (2) giving only conditional approval to BCS's charter renewal initially, despite BCS's high level of academic performance; and (3) forcing BCS to sign an MOU in order to get final approval. *Id.* ¶¶ 26, 37-39. BCS asserts that no other similarly situated charter school in Santa Clara County is being subjected to this treatment. *Id.* ¶ 39. Second, BCS alleges that the requirements imposed by defendants are such that BCS will be forced to engage in unlawful discrimination in order to satisfy them—specifically, that it will be forced to use racial quotas or other prohibited race-based measures as part of its admissions process, in violation of the equal protection clause of the Fourteenth Amendment. *Id.* ¶¶ 5-6. The Court addresses each of these theories separately.

### 1. Intentional Discrimination: Disparate Treatment

BCS alleges that it is treated differently as compared to other similarly-situated charter schools because a majority of its student population is Asian. To establish a claim for disparate treatment, BCS will ultimately need to show that (1) it is part of a protected class[2], (2) it was

---

[2] BCS asserts that it has "an imputed racial identity" based on the racial identity of its students, and therefore has standing to sue. Dkt. No. 15 at 15. Defendants do not challenge this assertion, and they clarify in their reply brief that they do not seek dismissal on the basis that BCS lacks standing. *See* Dkt. No. 16 at 10.

6

1  treated differently from similarly situated individuals, and (3) this treatment was motivated by its
2  protected status.³  *Mandel v. Bd. of Trs. of California State Univ.*, No. 17-cv-03511, 2018 WL
3  1242067, at *17 (N.D. Cal. Mar. 9, 2018) (citing *Rashdan v. Geissberger*, 764 F.3d 1179, 1183
4  (9th Cir. 2014)).  The group of similarly situated individuals or entities "need not be similar in all
5  respects, but they must be similar in those respects relevant to the Defendants' policy."  *Olson v.*
6  *California*, 104 F.4th 66, 77 (9th Cir.), *cert. denied*, 145 S. Ct. 382 (2024) (quoting *Ariz. Dream*
7  *Act Coal. v. Brewer*, 757 F.3d 1053, 1064 (9th Cir. 2014)).

8  Here, BCS suggests that the other fifteen charter schools authorized by SCCBOE are
9  "similarly-situated."  Dkt. No. 10 ¶ 25.  Of these schools, BCS alleges that it "has one of the
10 smallest variances between its Hispanic school population and the population of the surrounding
11 district."  *Id.*  Yet, BCS asserts, "SCCBOE does not bully and harass those other charter schools
12 on their 'population imbalance' nor threaten them with non-renewal of their charters, nor
13 constructively deny them their charters."  *Id.* ¶¶ 25, 39.  Indeed, BCS alleges that it was entitled to
14 the benefit of *unconditional*⁴ renewal of its charter for a period of seven years, given its status as a
15 "high performing charter school."  *Id.* ¶ 38.  It maintains that the reason SCCBOE treats BCS
16 differently is that "the disproportionality [at the other charter schools] is not about too many Asian
17 students."  *Id.*

18 Defendants argue that these allegations fail to state a claim for relief under Title VI.  They
19 point out that it is undisputed that BCS's charter has been renewed through 2030 with the signing
20 of the MOU, and for this reason, no benefit has been withheld from BCS.  Dkt. No. 11 at 15.  In

---

³ As discussed above, a showing of discriminatory intent is *not* required for a Title VI claim at the pleading stage.  *See Aguirre v. San Leandro Police Dep't*, No. 10-04364 CW, 2011 WL 738292, at *3 (N.D. Cal. Feb. 22, 2011) (citing *Monteiro*, 158 F.3d at 1026) ("Unlike claims under the Equal Protection Clause which must plead intentional discrimination, Title VI claims need only allege that the defendant is engaging in discrimination, although a showing of intent is necessary at trial."); *see also Mandel*, 2018 WL 1242067, at *17 n.14 (acknowledging "that under Title VI, the Ninth Circuit has held that although 'a showing of intent is required at trial,' for pleadings, the complaint only needs to allege 'that the defendant is engaging in discrimination.'").

⁴ Defendants contend that BCS's charter renewal is now unconditional.  Dkt. No. 11 at 9.  BCS asserts that its charter renewal is conditional because it was required to sign an MOU to obtain renewal.  Dkt. No. 15 at 17.  For purpose of resolving this motion to dismiss, the Court views the facts in the light most favorable to BCS.

addition, defendants argue that no inference can reasonably be drawn that BCS has been subjected to disparate treatment because of the racial composition of its student population where SCCBOE has also acted to address BCS's non-compliance with statutory requirements regarding demographic categories that are *not* based on race, including "English learners, socioeconomically disadvantaged students, and students with disabilities." *See* Dkt. No. 16 at 8-9.

The Court disagrees that BCS's disparate treatment claim necessarily fails at the pleading stage because its charter was ultimately renewed through 2030. As discussed below, BCS may suffer injury from the imposition of additional burdens by defendants and from the efforts required to conform its enrollment practices during the period of the current charter to what is required to obtain future renewals. As to defendants' argument that their actions with respect to BCS's charter renewal were motivated by factors other than race, this argument is not persuasive at the pleading stage where BCS need not plead discriminatory intent for the claim to proceed.

Nevertheless, the Court agrees that the allegations in the operative complaint are insufficient to state a claim under Title VI. BCS does not allege any facts from which the Court might reasonably infer that the fifteen other schools that BCS says are treated more favorably are "similarly situated" to BCS. And while the determination of whether a particular set of schools qualifies as similarly-situated to BCS is likely to require a fact-specific inquiry more appropriate for summary judgment, "a complaint's threadbare recital that another class is similarly situated will not suffice to survive a motion to dismiss." *Olson*, 104 F.4th at 77 (cleaned up). Finally, BCS's allegations of disparate treatment are largely conclusory characterizations, consisting of statements that other schools are "not harassed," are "not threatened" with non-renewal, or do not receive "all of these conditions and requirements forced upon BCS." Dkt. No. 10 ¶¶ 25, 30.

For these reasons, the Court concludes that the complaint fails to state a plausible claim for disparate treatment based on race. However, as BCS may be able to allege facts sufficient to address this deficiency, the Court will permit BCS to amend its complaint.

### 2. Requirement for Racial Balance

As noted above, BCS also contends that defendants' actions will force BCS to engage in unlawful race discrimination in order to "achieve a specific numerical racial balance . . . through

some kind of 'action plan'." Dkt. No. 15 at 13 n.6.

Defendants do not dispute that requiring BCS to implement specific racial quotas would be unlawful. Dkt. No. 16 at 13 (citing *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181 (2023)); *see also Moyo v. Gomez*, 40 F.3d 982, 985 (9th Cir. 1994) (In the Title VII context, "requiring an employee to discriminate is itself an unlawful employment practice."). Defendants argue, however, that BCS's own allegations show that defendants are simply requiring BCS to comply with California law governing charter schools, which requires that a school make efforts to enroll a student population that reflects the demographics of the school district in which the school is located. Dkt. No. 11 at 1 (citing Cal. Educ. Code § 47605(c)(5)(G)) ("[E]very charter school in the state, as a condition of approval or renewal must articulate: '[t]he means by which the charter school will achieve a balance of racial and ethnic pupils, special education pupils and English learners pupils . . . that is reflective of the general population'" of the district). Specifically, they observe that no provision in the charter itself or the MOU requires use of quotas for any purpose or requires BCS to use race as a factor in *admissions* (which is based on a lottery system). Rather, BCS is only required to use "outreach and recruitment measures that take race into account to increase the diversity *among the applicant pool*, . . ." Dkt. No. 11 at 19-20; *see also id.* at 1-3. Defendants stress that "it is BCS's *compliance with those steps* that will be monitored" by defendants, not whether a particular numerical balance has been achieved. Dkt. No. 16 at 9 (emphasis added).

The Court agrees with defendants that the complaint contains no plausible allegations that defendants have expressly directed BCS to implement unlawful racial quotas or to otherwise consider race in admissions. Indeed, BCS acknowledges that, on their face, the applicable state law, the charter, and the MOU do not require the use of race-based quotas. *See* Dkt. No. 15 at 12; Dkt. No. 20 at 18:19-19:13. Instead, BCS's theory of liability appears to be that defendants are implicitly requiring use of such quotas because it would be impossible for BCS to successfully enroll a student population that is "reflective of the district" with regard to racial or ethnic makeup without using quotas, and defendants purportedly require BCS to actually enroll a student population with *same* racial demographics as the district, or at least a student population that does

not have "too many Asians" compared to the percentage of Asians in the district, or face non-renewal of their charter. *See* Dkt. No. 15 at 13 n.6. At the motion hearing, BCS suggested that, given its theory of liability, it may wish to challenge the "racial balance" provision of the Education Code itself on the ground that it is unconstitutional as applied by defendants. Dkt. No. 20 at 14:11-17, 19:2-13. The operative complaint contains no such "as-applied" challenge or supporting allegations.

In view of BCS's acknowledgement that no express requirement to use racial quotas exists, and because it remains unclear precisely which theory or theories of liability BCS means to assert against defendants regarding "racial balance," the Court finds that BCS has failed to state a plausible claim that defendants require it to engage in unlawful race discrimination. However, as BCS may be able to allege facts sufficient to address the deficiencies described above, the Court will permit BCS to amend its complaint.

### B.   Rule 12(b)(1): Ripeness

Defendants separately argue that dismissal is warranted because BCS's claim is not ripe. Dkt. No. 11 at 15-16. "Ripeness" implicates both constitutional and prudential considerations. *Bishop Paiute Tribe v. Inyo Cnty.*, 863 F.3d 1144, 1153 (9th Cir. 2017). As a constitutional consideration, "[f]or a case to be ripe, it must present issues that are 'definite and concrete, not hypothetical or abstract.'" *Id.* (quoting *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000)). As a prudential consideration, two factors guide a court's assessment: "'the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" *Thomas*, 220 F.3d at 1141 (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 149 (1967), *abrogated by Califano v. Sanders*, 430 U.S. 99 (1977)).

Defendants' ripeness challenge derives from its thesis that BCS has shown "no real, concrete injury . . . , since it is not at risk of nonrenewal until 2030, and Defendants have not threatened to revoke BCS'[s] charter let alone initiate[] any of the statutory steps that would be necessary." Dkt. No. 16 at 10. However, as discussed above, this characterization of BCS's claim does not accurately capture the injury it alleges. BCS claims to suffer a present and ongoing injury based on its current compliance obligations and defendants' ongoing disparate treatment.

*See* Dkt. No. 15 at 16-17 ("BCS alleges that 'SCCOE and SCCBOE are insisting that BCS achieve de facto "racial quotas",' not in the future, but recently and now."); *id.* at 17 ("BCS alleges that being subject to the MOU as a condition of renewal is itself a form of harm."). In addition, BCS alleges that defendants' actions have harmed its "reputation and standing in the community" and that it "has expended substantial resources in time, personnel, and money" to respond to the criticism it has received. Dkt. No. 10 ¶¶ 39, 40. Defendants do not suggest that these types of injuries are generally not "real" or "concrete," but they argue that BCS has not sufficiently alleged that "the Charter . . . has required BCS to expend such resources." Dkt. No. 16 at 11.

If BCS is able to state a viable claim or claims under Title VI for race discrimination, the Court is not persuaded that the charter renewal alone will render any such claims not ripe, either as a constitutional or prudential matter. For this reason, the Court denies defendants' motion to dismiss for lack of subject matter jurisdiction.

## IV.   CONCLUSION

For the reasons discussed above, the Court grants defendants' motion to dismiss under Rule 12(b)(6) with leave to amend. Any amended complaint must be filed no later than **August 1, 2025**.

**IT IS SO ORDERED.**

Dated: July 11, 2025

Virginia K. DeMarchi
United States Magistrate Judge

11