UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

THE BULLIS-PURISSIMA
ELEMENTARY SCHOOL,

Plaintiff,

v.

SANTA CLARA COUNTY BOARD OF
EDUCATION, et al.,

Defendants.

Case No.  24-cv-08527-VKD

**ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS'
MOTION TO DISMISS THE SECOND
AMENDED COMPLAINT**

Re: Dkt. No. 24

Plaintiff The Bullis-Purissima Elementary School, operator of Bullis Charter School ("BCS"), brings this action against defendants the Santa Clara County Board of Education ("SCCBOE") and the Santa Clara County Office of Education ("SCCOE"), asserting three claims for violations of Title VI of the Civil Rights Act of 1964 and the equal protection clause of the Fourteenth Amendment to the United States Constitution.  Dkt. No. 23.  After the Court granted defendants' motion to dismiss plaintiff's first amended complaint pursuant to Rule 12(b)(6) with leave to amend, BCS timely filed a second amended complaint (SAC), the operative pleading.  *See* Dkt. Nos. 21, 23.

Defendants move to dismiss the SAC pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Dkt. No. 24.  BCS opposes the motion.  Dkt. No. 25.  The Court heard oral argument on the motion on January 27, 2026.  Dkt. No. 35.[1]  Upon consideration of the moving and responding papers and the oral arguments presented, the Court grants in part and denies in part defendants' motion to dismiss.

---

[1] All parties have consented to magistrate judge jurisdiction.  Dkt. Nos. 13, 14.

United States District Court
Northern District of California

United States District Court
Northern District of California

## I.       BACKGROUND

According to the SAC, plaintiff The Bullis-Purissima Elementary School operates BCS, a TK-8 public charter school located within the geographic boundaries of the Los Altos School District and authorized by SCCBOE.  Dkt. No. 23 ¶ 2.  BCS alleges that it is "the highest-performing public school in Santa Clara County."  *Id.*

BCS asserts that, despite its high level of performance, over the past six years, SCCBOE has subjected it to "adverse treatment, deprivation of rights under the law, and ongoing harassment" because BCS's student population does not have a racial and ethnic makeup that reflects the population of the school district as a whole.  *Id.* ¶¶ 24-27.  In particular, BCS alleges that SCCBOE has sent "numerous letters" to BCS "falsely accusing" it of excluding students on the basis of race.  *Id.* ¶ 24.  BCS asserts that SCCBOE does not subject any of the other fourteen charter schools operating within Santa Clara County to this level of scrutiny and that the "adverse treatment" BCS complains of stems from SCCBOE's "opinion" that "BCS has enrolled too many Asian students and too few Hispanic students . . . ."  *Id.* ¶ 25.

On June 3, 2024, BCS sought renewal of its charter for a seven-year term.  *Id.* ¶ 26.  BCS alleges that its charter should have been unconditionally renewed, given BCS's high level of performance.  *Id.* ¶¶ 2, 26.  However, on August 4, 2024, SCCOE informed BCS that "there continues to be underrepresentation of some historically underserved student groups at [BCS]" and that BCS therefore would receive only "conditional approval."  *Id.* ¶ 26.  On August 26, 2024, SCCBOE held a meeting to discuss BCS's charter renewal petition where SCCOE "indicated that approval of BCS'[s] renewal petition . . . was not warranted because BCS has not 'fully achieved being reflective of the district' with regard to racial and ethnic makeup . . . ."  *Id.* ¶ 27.  Defendants ultimately decided to renew BCS's charter for a period of five years with conditions, including the requirement that BCS enter into a memorandum of understanding ("MOU") with defendants.  *Id.* ¶ 29.

BCS appealed defendants' decision to the State Board of Education, which dismissed the appeal on the basis that BCS's charter had been renewed conditionally, not outright denied.  *Id.* ¶ 30.  Thereafter, SCCOE and BCS conferred regarding the proposed MOU for three months.  *Id.*

¶ 31. On November 15, 2024, BCS's board approved a version of the MOU suggested by SCCOE staff. *Id.* ¶ 32. However, this version of the MOU was voted down by SCCBOE on November 20, 2024, allegedly because it contained the following language: "Charter School contends that factual evidence did not support any finding that Charter School excluded any student who wished to attend, and disagrees with and objects to the Conditions . . . ." *Id.* ¶¶ 31-32. SCCBOE approved a revised version of the MOU that did not contain this language at its December 18, 2024 meeting, a version that BCS contends contained "even more changes . . . beyond the conditions SCCBOE set for renewal on August 27, 2024." *Id.* ¶ 34. BCS signed the MOU but asserts that it "executed [this] MOU under . . . protest." *Id.* After the execution of the MOU, on January 9, 2025, defendants confirmed with the California Department of Education that BCS's charter had been renewed through June 30, 2030. *Id.*

BCS's first amended complaint asserted one claim for violations of Title VI of the Civil Rights Act of 1964. Dkt. No. 10. After the Court granted defendants' motion to dismiss pursuant to Rule 12(b)(6) with leave to amend, BCS timely filed its SAC in which it asserts three claims against SCCOE and SCCBOE: one claim asserting violations of Title VI of the Civil Rights Act of 1964, and two claims asserting violations of the equal protection clause of the Fourteenth Amendment. *See* Dkt. Nos. 21, 23. BCS seeks declaratory and injunctive relief, compensatory damages,[2] and attorneys' fees and costs. Dkt. No. 23 at 30-32.

## II.     LEGAL STANDARD

### A.     Rule 12(b)(1)

A Rule 12(b)(1) motion to dismiss challenges a federal court's subject matter jurisdiction. Such a challenge may be made either on the face of the pleadings (a "facial attack") or by presenting extrinsic evidence (a "factual attack"). *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)). "In a

---

[2] At the motion hearing, BCS asserted that claim 3 is distinct from claims 1 and 2 because claim 3 seeks compensatory damages. Dkt. No. 35. However, the SAC reflects that BCS's request for compensatory damages is limited to its Title VI claim (claim 1). *Compare* Dkt. No. 23 ¶ 43 (claim 1, seeking compensatory damages and declaratory and injunctive relief) *with id.* ¶¶ 59-60, 67-68 (claims 2 and 3, seeking declaratory and injunctive relief).

United States District Court
Northern District of California

facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction.  By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

Because defendants' arguments focus on the sufficiency of the SAC's allegations, the Court construes defendants' motion as a facial attack on BCS's standing.  As such, the record is limited to the complaint and materials that may be judicially noticed.  *See Hyatt v. Yee*, 871 F.3d 1067, 1071 n.15 (9th Cir. 2017).  Additionally, the Court must accept well-pled allegations of the SAC as true, draw all reasonable inferences in BCS's favor, and determine whether its allegations are sufficient to support standing.  *See id.*  As the party asserting federal subject matter jurisdiction, BCS bears the burden of establishing its existence.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

### B.    Rule 12(b)(6)

A Rule 12(b)(6) motion to dismiss for failure to state a claim tests the legal sufficiency of the claims in the complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Dismissal is appropriate where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory.  *Id.* (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).  In such a motion, all material allegations in the complaint must be taken as true and construed in the light most favorable to the claimant.  *Id.*

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).  Moreover, the Court is not required to "'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'"  *Prager Univ. v. Google LLC*, No. 17-cv-06064-LHK, 2018 WL 1471939, at *3 (N.D. Cal. Mar. 26, 2018) (quoting *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam)).  Nor does the Court accept "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049,

United States District Court
Northern District of California

4

1055 (9th Cir. 2008).

Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This means that the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citations omitted). However, only plausible claims for relief will survive a motion to dismiss. *Iqbal*, 556 U.S. at 679. A claim is plausible if the facts pled permit the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* A plaintiff does not have to provide detailed facts, but the pleading must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678.

## III.    DISCUSSION

Defendants challenge all claims in the SAC for failure to state a claim under Rule 12(b)(6). Dkt. No. 24 at 4-12. In addition, defendants challenge BCS's standing to assert its third claim on behalf of Asian students and applicants. *Id.* at 12-13. In connection with its opposition to the motion, BCS requests judicial notice of two documents. Dkt. No. 25-1. The Court first addresses BCS's request for judicial notice before considering defendants' arguments for dismissal of the SAC.

### A.    BCS's Request for Judicial Notice

BCS requests judicial notice of two documents: (1) a May 5, 2021 SCCBOE meeting agenda, and (2) an August 2, 2023 SCCBOE meeting agenda. Dkt. No. 25-1 at 2. BCS also requests that the Court take judicial notice of the "the fact that all County Board actions requiring a racial or other population 'cure' were pertaining and directed to BCS and no other charter school." *Id.* At the hearing, defendants stated that they do not object to the Court taking judicial notice of the two documents. Dkt. No. 35.

Federal Rule of Evidence 201 states that "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2); *see also Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018). These reliable sources include "matters of public record . . . as long as the facts noticed are not subject to reasonable dispute."

United States District Court
Northern District of California

*Intri-Plex Techs., Inc. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007) (citation modified). Accordingly, while a court may take judicial notice of matters of public record when deciding a motion to dismiss, it "cannot take judicial notice of disputed facts contained in such public records." *Khoja*, 899 F.3d at 999.

As the request for judicial notice of the two documents is unopposed and the documents appear to be matters of public record, the Court finds that it may properly take judicial notice of these documents. The Court does not take judicial notice of any disputed facts included in these public records.

### B.     Claim 1:   Title VI Discrimination

BCS contends that defendants' treatment of the school during the charter renewal process and the years preceding it violates Title VI of the Civil Rights Act of 1964. Dkt. No. 23 ¶¶ 35-45. Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. To state a claim under this statute, BCS must plausibly allege that defendants are (1) "engaging in racial discrimination" and (2) "receiving federal financial assistance." *Fobbs v. Holy Cross Health Sys. Corp.*, 29 F.3d 1439, 1447 (9th Cir. 1994), *overruled on other grounds by Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131 (9th Cir. 2001). Defendants do not contend that BCS fails to allege that defendants receive federal funds; thus, the sole question is whether BCS has adequately alleged racial discrimination.

The pleading requirements for a discrimination claim under Title VI are similar to those for an equal protection claim under the Fourteenth Amendment. *See Grutter v. Bollinger*, 539 U.S. 306, 343 (2003) (quoting *Regents of Univ. of Cal. v. Bakke*, 438 U.S. 265, 287 (1978) (opinion of Powell, J.)) ("Title VI proscribes only those racial classifications that would violate the Equal Protection Clause or the Fifth Amendment." (citation modified)). "Private parties seeking judicial enforcement of Title VI's nondiscrimination protections must prove intentional discrimination." *Yu v. Idaho State Univ.*, 15 F.4th 1236, 1242 (9th Cir. 2021). However, at the pleading stage, a Title VI plaintiff need only allege that the defendant engaged in discrimination; he or she need not

plead intent. *Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1026 (9th Cir. 1998); *see also Fobbs*, 29 F.3d at 1447 ("Although the plaintiff must prove intent at trial, it need not be pled in the complaint.").

BCS contends that defendants subject BCS to disparate treatment based on the racial composition of its student population. BCS alleges that defendants "have singled out and solely targeted adverse actions at BCS" because defendants find it "unacceptable" that Asian students are overrepresented at BCS. Dkt. No. 23 ¶ 39(b). BCS alleges that defendants' disparate treatment includes: (1) "harass[ment] and bull[ying]" through notices and letters alleging BCS's noncompliance with California law; (2) giving only conditional approval to BCS's charter renewal initially, despite BCS's high level of academic performance; and (3) forcing BCS to sign an MOU in order to get final approval. *Id.* ¶¶ 38(a)-(c), 39(a). BCS asserts that no other similarly situated charter school in Santa Clara County has been subject to the same treatment. *Id.* ¶¶ 25, 39(d).

To establish a claim for disparate treatment, BCS will ultimately need to show that (1) it is part of a protected class,[3] (2) it was treated differently from similarly situated individuals or entities, and (3) this treatment was motivated by its protected status.[4] *See Mandel v. Bd. of Trs. of California State Univ.*, No. 17-cv-03511, 2018 WL 1242067, at \*17 (N.D. Cal. Mar. 9, 2018) (citing *Rashdan v. Geissberger*, 764 F.3d 1179, 1183 (9th Cir. 2014)). The group of similarly situated individuals or entities "need not be similar in all respects, but they must be similar in those respects relevant to the Defendants' policy." *Olson v. California*, 104 F.4th 66, 77 (9th Cir.), *cert. denied*, 145 S. Ct. 382 (2024) (quoting *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1064 (9th Cir. 2014)).

---

[3] For purpose of this motion, defendants do not dispute that BCS is part of a protected class with respect to this claim. *See* Dkt. No. 24 at 6-8.

[4] As discussed above, a showing of discriminatory intent is *not* required for a Title VI claim at the pleading stage. *See Aguirre v. San Leandro Police Dep't*, No. 10-cv-04364 CW, 2011 WL 738292, at \*3 (N.D. Cal. Feb. 22, 2011) (citing *Monteiro*, 158 F.3d at 1026) ("Unlike claims under the Equal Protection Clause which must plead intentional discrimination, Title VI claims need only allege that the defendant is engaging in discrimination, although a showing of intent is necessary at trial."); *see also Mandel*, 2018 WL 1242067, at \*17 n.14 (acknowledging "that under Title VI, the Ninth Circuit has held that although 'a showing of intent is required at trial,' for pleadings, the complaint only needs to allege 'that the defendant is engaging in discrimination.'").

Here, BCS suggests that the fourteen other charter schools authorized by SCCBOE are "similarly-situated." *See* Dkt. No. 23 ¶ 25. Of these schools, BCS alleges that it "has one of the smallest variances between its Hispanic school population and the population of the surrounding district." *Id.* Yet, BCS asserts, "SSCBOE does not bully and harass those other charter schools on their 'population imbalance' nor threaten them with non-renewal of their charters, nor constructively deny their charters . . . ." *Id.* Indeed, BCS alleges that it was entitled to the benefit of unconditional renewal of its charter for a period of seven years, given its status as a "high-performing charter school." *Id.* ¶ 38(a). It maintains that the reason defendants treat BCS differently is that the "disproportionality [at the other charter schools] is not about too many Asian students." *Id.* ¶ 38(c).

Defendants contend that these allegations fail to state a claim for relief under Title VI. In addition to pointing out that it is undisputed that BCS's charter has been renewed through 2030 with the signing of the MOU, defendants argue that nothing in the California Charter Schools Act ("CSA"), codified at California Education Code § 47600, *et seq.*, entitles BCS to an unconditional renewal of its charter for seven years. Dkt. No. 24 at 5-6. For these reasons, defendants argue that no benefit has been withheld from BCS. *Id.* Defendants also argue that no inference can reasonably be drawn that they have subjected BCS to disparate treatment because of the racial composition of its student population. *Id.* at 6. Defendants contend that BCS "does not account for, or even acknowledge, the other bases on which the alleged 'adverse actions' against it were based," such as BCS's "underenrollment of English Learners, socioeconomically disadvantaged students, and students with disabilities." *Id.* at 7.

As discussed in its prior order, the Court finds that defendants' argument that their actions with respect to BCS's charter renewal were motivated by factors other than race is not persuasive at the pleading stage where BCS need not plead discriminatory intent for the claim to proceed. *See* Dkt. No. 21 at 8. In addition, the Court disagrees with defendants that BCS's disparate treatment claim necessarily fails at the pleading stage because its charter was ultimately renewed through 2030. BCS may suffer injury from the imposition of additional burdens by defendants and from the efforts required to conform its enrollment practices during the period of the current

8

United States District Court
Northern District of California

charter to what is required to obtain future renewals.  Given SCCBOE's oversight responsibilities for charter schools within its jurisdiction, the Court seriously doubts that BCS can sustain a viable Title VI claim based on allegations that SCCBOE's criticism and questioning of BCS's practices amounts to "bullying" or "harassment."  However, the Court finds that BCS otherwise plausibly alleges that it was treated differently from similarly situated schools because of the racial composition of its student population.

Specifically, the SAC alleges that when four other charter schools authorized by SCCBOE were due for charter renewal, defendants did not issue notices to cure and correct racial imbalances although Asian students were underrepresented at those schools.  Dkt. No. 23 ¶ 39(d). The SAC further alleges that another school, Alpha Public Schools – Jose Hernandez ("APS"), is a "low-performing" school with a presumption of charter denial, in contrast to the presumption of charter renewal that BCS is entitled to as a "high-performing" school.  *Id.*  The SAC alleges that APS received an unconditional charter renewal despite the presumption against renewal and APS officials' statements that the school "significantly exceeded the district percentage of Hispanic enrollment."  *Id.*  In addition, the SAC alleges that the MOU requires BCS, and not any other schools, "to change operational provisions in its petition, modify admission preferences that are otherwise lawful and customary for other schools authorized by SCCOE, and . . . maintain and continue to implement a plan to achieve the racial quotas that SCCBOE demands . . . ."  *Id.* ¶ 30.

At the pleading stage, the SAC plausibly alleges facts that permit the Court to draw a reasonable inference that BCS was treated differently from similarly situated schools that also did not enroll a student population that "achieve[s] a balance of racial and ethnic pupils . . . that is reflective of the general population residing within the territorial jurisdiction of the school district" because of the particular racial composition of its student population, which includes a disproportionate number of students of Asian descent.  Accordingly, the Court concludes that the SAC states a plausible Title VI claim for disparate treatment based on race.

### C.      Claim 2:  Equal Protection Clause Violation

BCS alleges that Section 47605(c)(5)(G) of the Education Code violates the equal protection clause of the United States Constitution because it "requires BCS and other charter

schools to actually achieve a racial balance that reflects proportions of students enrolled at the school district in which the charter school is authorized to operate." Dkt. No. 23 ¶ 50. An "as applied" challenge to the constitutionality of a statute is a claim that the operation of a statute is unconstitutional in a particular case, but not necessarily in all cases, while a "facial" challenge asserts that the statute may rarely or never be constitutionally applied. *Erotic Serv. Provider Legal Educ. & Rsch. Project v. Gascon*, 880 F.3d 450, 455 (9th Cir.), *amended*, 881 F.3d 792 (9th Cir. 2018). "[T]he distinction between facial and as-applied challenges is not so well defined that it has some automatic effect or that it must always control the pleadings and disposition in every case involving a constitutional challenge." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 331 (2010). Instead, the distinction matters primarily as to the appropriate remedy if a constitutional violation is found. *Isaacson v. Horne*, 716 F.3d 1213, 1230 (9th Cir. 2013). Here, BCS contends that "[t]he statute, *as interpreted and applied by [d]efendants*, is a direct command to engage in the very racial discrimination the Fourteenth Amendment was enacted to prohibit." *See* Dkt. No. 23 ¶ 57 (emphasis added). Accordingly, the Court construes BCS's claim as an as-applied challenge to Section 47605(c)(5)(G).[5]

As to equal protection, the Fourteenth Amendment provides that "no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *Cummings v. Harris*, No. 14-cv-02539-BLF, 2014 WL 5454200, at *3 (N.D. Cal. Oct. 27, 2014) (quoting *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439-40 (1985)).

BCS contends that, relying on their interpretation of Section 47605(c)(5)(G), defendants are forcing BCS to engage in unlawful discrimination. Specifically, BCS asserts that it will be forced to use racial quotas or other prohibited race-based measures as part of its recruitment and admissions process in order to "achieve" an enrolled student population with the racial

---

[5] In its opposition, BCS states that it raises a "facial challenge to the law." Dkt. No. 25 at 14. However, at the motion hearing, BCS stated that it raises a facial challenge to the statute "in the alternative" to its as-applied challenge. Dkt. No. 35. As neither party briefed how the statute should be interpreted on its face, the Court limits its discussion to BCS's as-applied challenge, which is the claim asserted in the SAC.

demographics demanded as a condition for the current renewal of BCS's charter and future renewals of the charter. Dkt. No. 23 ¶¶ 57, 58. BCS argues that requiring it to achieve these numerical goals violates the equal protection clause of the Fourteenth Amendment. *Id.*; Dkt. No. 25 at 13-15.

Defendants do not dispute that requiring BCS to implement specific racial quotas in school admissions would be unlawful. Dkt. No. 24 at 8 (citing *Parents Involved in Community Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701 (2007) and *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181 (2023)); *see also Moyo v. Gomez*, 40 F.3d 982, 985 (9th Cir. 1994) (in the Title VII context, "requiring an employee to discriminate is itself an unlawful employment practice."). Defendants argue, however, that the CSA's mandate that a charter school "comply with . . . all of the provisions set forth in its charter," including the requirement to "achieve a balance of racial and ethnic pupils . . . that is reflective of the general population residing within the territorial jurisdiction of the school district," is an "aspirational requirement only." Dkt. No. 24 at 8-9 (quoting Cal. Educ. Code §§ 47605(c)(5)(G), 47610). Defendants contend that BCS's own allegations show that compliance with Section 47605(c)(5)(G) is based on the steps taken to achieve a racial balance that reflects the population of the school district where the charter school is located, rather than any specific outcome. *Id.* (citing Dkt. No. 23 ¶ 49).

The briefing on defendants' motion to dismiss reflects that the parties disagree regarding what defendants require BCS to do. However, at the pleading stage the Court must accept the truth of all well-pled factual allegations in the SAC and must construe those allegations in BCS's favor. Applying this standard, the Court finds that the SAC plausibly alleges that defendants' application of Section 47605(c)(5)(G) requires BCS to "actually achieve" a racial balance "that is reflective of the general population of the school district" in which BCS operates. *See* Dkt. No. 23 ¶¶ 48, 50. Although Section 47605(c)(5)(G), on its face, does not require the use of race-based quotas, BCS has adequately alleged that the threat of charter revocation effectively requires BCS to "actually achieve a racial balance" that reflects the district's general population. *Id.* ¶¶ 30, 49-50. BCS plausibly alleges that it is "judged on [its] ability to produce a specific racial outcome."

United States District Court
Northern District of California

11

Case 5:24-cv-08527-VKD   Document 36   Filed 03/13/26   Page 12 of 16

*Id.* ¶ 56. If SCCBOE assesses a charter school's compliance with its charter and MOU by looking principally, or exclusively, at the school's admissions statistics, as BCS alleges, then there is at least a question of whether SCCBOE effectively requires achievement of a specific quota. *See id.* ¶ 39(o) (alleging the MOU "mandates that BCS 'include metrics for measuring the success/effectiveness of the plan and its components,' i.e., whether BCS has actually achieved the growth of racial groups deemed by SCCOE to be 'historically underserved.'"). "A law compelling persons to discriminate against other persons because of race is a palpable violation of the Fourteenth Amendment . . . ." *Monterey Mech. Co. v. Wilson*, 125 F.3d 702, 708, 710-12 (9th Cir. 1997) (finding California statute that required general contractors to subcontract specific percentages of work to women or minority subcontractors or demonstrate "good faith efforts" to meet percentage goals violated equal protection clause); *see also Moyo*, 40 F.3d at 985.

At this stage, the Court concludes that BCS plausibly alleges that defendants require an actual outcome, and not just steps to achieving a racial balance, and that these allegations are sufficient to support a claim that Section 47605(c)(5)(G), as applied by defendants, violates the equal protection clause.

### D. Claim 3: Equal Protection Clause Violation

BCS's third claim also alleges an equal protection violation. Dkt. No. 23 ¶¶ 61-68. The SAC alleges that "the only way that BCS could improve the odds of a[] Hispanic student being selected over an Asian student to fill a spot . . . is by recruiting substantially more Hispanic students to make it less likely that an Asian student's name will be drawn from the lottery." *Id.* ¶ 64. BCS contends that this approach "has a disparate impact on Asian students that seek to attend BCS, and for whom BCS has a legal and ethical responsibility to ensure that they do not face discrimination in BCS'[s] admission practices – the same for all students." *Id.* ¶ 65.

Defendants argue that the SAC's allegations do not state a plausible claim for relief. Dkt. No. 24 at 13-14. Specifically, defendants argue, "BCS does not, and cannot, plead any facts indicating that Asian BCS students or applicants are treated differently than any other similarly situated students with respect to admission to BCS." *Id.* at 14. BCS responds that defendants' argument "misses the point of this claim" because BCS asserts claim 3 "on behalf of its Asian

students . . . [and] on its own behalf." Dkt. No. 25 at 16, 18. BCS argues that defendants "are requiring BCS to treat student[s] differently in the recruitment process, subjecting BCS to injury by the fact of being required to do so against its wishes, and face injury (as BCS has) where such recruitment efforts do not actually result in the enrollment balance [d]efendants require." *Id.* at 19. Defendants argue that to the extent claim 3 is based on purported harm to BCS, the claim "merely mirrors its Second Cause of Action." *See* Dkt. No. 26 at 12. The Court agrees.

At the hearing, the Court observed that claims 2 and 3 appear to be indistinguishable as both claims challenge defendants' conduct as "requiring" BCS to achieve a racially balance student population. Dkt. No. 35; *compare* Dkt. No. 23 ¶ 50 (claim 2, "The statute, as interpreted and applied by [d]efendants, is a direct command to engage in the very racial discrimination the Fourteenth Amendment was enacted to prohibit.") *with id.* ¶¶ 63-64 (claim 3, "Defendants have required that BCS achieve an increase in its Hispanic student population motivated by Defendants' view that Asian students have been overrepresented and should be reduced to make way for Hispanic students. . . . This approach is necessarily discriminatory in its intent and goes beyond fair efforts to recruit a diverse student body through broad marketing efforts."). When pressed, BCS could not articulate any relevant distinction between the two claims to the extent that claim 3 (like claim 2) is asserted on BCS's behalf. Dkt. No. 35.

Accordingly, the Court grants defendants' Rule 12(b)(6) motion to dismiss claim 3 as duplicative of claim 2. *See M.M. v. Lafayette Sch. Dist.*, 681 F.3d 1082, 1091 (9th Cir. 2012) ("It is well established that a district court has broad discretion to control its own docket, and that includes the power to dismiss duplicative claims.").

To the extent BCS purports to assert claim 3 on behalf of current and prospective students of Asian descent, defendants move to dismiss this claim for lack of standing pursuant to Rule 12(b)(1). Dkt. No. 24 at 12-13. Under Article III of the Constitution, federal courts have jurisdiction to decide only actual cases or controversies, U.S. Const., art. III, § 2, and BCS has standing to sue if it "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); *see also Lujan v. Defenders of*

*Wildlife*, 504 U.S. 555, 560-61 (1992).  BCS's injury must be both "particularized" and "concrete."  A "particularized" injury is one that "affect[s] the plaintiff in a personal and individual way." *Spokeo, Inc.*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560 n.1).  A "concrete" injury "must actually exist" and must be "real, and not abstract." *Id.* at 340.

It is not entirely clear whether BCS is attempting to plead "associational standing" to sue on behalf of current Asian students.  "[A]n association has standing to bring suit on behalf of its members when:  (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).  Defendants argue that BCS cannot show that its students would have standing to sue because BCS has identified no actual or imminent injury to *any* student, let alone Asian students specifically, particularly given that *any* increase in the number of applicants has an *identical* impact on the chances of admission for *any* individual prospective student.  Dkt. No. 24 at 12.  Defendants further argue that the interests BCS seeks to protect—i.e., the rights of Asian students and applicants—"are not germane to its purpose as an educational entity," as the school's mission is to educate all students, regardless of race. *Id.* at 13.

BCS responds that it has standing to assert claims on behalf of its students generally because defendants' "enforcement activities against BCS 'are expensive to defend against (taking funds away from the student program) and . . . distract school staff from core educational programming (taking focus away from students).'"  Dkt. No. 25 at 16 (quoting Dkt. No. 23 ¶ 66).  According to BCS, as a result, "[s]tudents suffer an injury in fact when their school is deprived of resources that would and should otherwise be available to support their education." *Id.* at 16-17.

There are two problems with BCS's argument.  First, BCS does not purport to assert claim 3 on behalf of its "students generally," but only on behalf of Asian students.  Second, allegations that a plaintiff has incurred costs or diverted resources are generally not sufficient to support standing.  As the Supreme Court has observed, a plaintiff "cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action."

14

*Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 394 (2024) (rejecting organization's standing argument that defending against government actions "forced" it to "expend considerable time, energy, and resources" and caused it to spend "'considerable resources' to the detriment of other spending priorities"); *see also Satanic Temple v. Labrador*, 149 F.4th 1047, 1054 (9th Cir. 2025) (quoting *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010)) ("[A]n organization 'cannot manufacture the injury by incurring litigation costs or simply choosing to spend money fixing a problem that otherwise would not affect the organization at all.'").  BCS's allegations regarding litigation costs and diversion of resources do not confer standing on BCS to assert a claim on behalf of its students generally, or on behalf of Asian students specifically.

Accordingly, to the extent BCS purports to assert an equal protection claim on behalf of current or prospective students of Asian descent, the Court grants defendants' Rule 12(b)(1) motion to dismiss claim 3 for lack of standing.

### E.     Leave to Amend

Rule 15(a) provides that leave to amend "should be freely given when justice so requires," and "the court must remain guided by the underlying purpose of Rule 15 . . . to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotations and citations omitted). "The decision of whether to grant leave to amend nevertheless remains within the discretion of the district court," which may deny leave to amend if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the party seeking amendment has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

BCS includes an abbreviated request for leave to amend in its opposition and made a similar request at the hearing.  Dkt. No. 25 at 19; Dkt. No. 35.  However, BCS does not explain what amendments it could make to address the defects the Court describes above.  The Court has already given BCS one opportunity to amend, and it does not appear that BCS can amend its complaint further to state a claim for relief on behalf of current and prospective Asian students.

15

Because further leave to amend would be futile, the Court grants the motion to dismiss as to claim 3 without leave to amend.

## IV.    CONCLUSION

For the reasons discussed above, the Court grants in part and denies in part defendants' motion to dismiss, as follows:

(1) Claim 1:  The motion is denied.

(2) Claim 2:  The motion is denied.

(3) Claim 3:  The motion is granted, and the claim is dismissed.

Defendants' answer is due no later than **April 3, 2026**.

The Court will hold an initial case management conference on **April 21, 2026**.  The parties' joint case management statement is due **April 14, 2026**.

**IT IS SO ORDERED.**

Dated: March 13, 2026

_Virginia K. DeMarchi_
Virginia K. DeMarchi
United States Magistrate Judge

United States District Court
Northern District of California

16